UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Joseph Edwin Harju,** | **Civil No. 06-1761 (ADM/SRN)** |
| **Plaintiff,** | **REPORT AND RECOMMENDATION** |
| v. | |
| **Timothy Comrie,**<br>**I.S.R. Supervising Agent,**<br>**Arrowhead Regional Corrections,**<br>**Minnesota Department of Corrections** | |
| **Defendant.** | |

Joseph Edwin Harju, pro se

John D. Kelly, Esq. and Catherine E. Martineau, Esq., on behalf of Defendant Timothy Comrie

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter comes before the undersigned United States Magistrate Judge on Defendant Timothy Comrie's Motion for Summary Judgment (Doc. No. 24.)[1]  This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c).

For the reasons set forth below, this Court recommends that Defendant Timothy Comrie's Motion for Summary Judgment be granted.

---

[1] Timothy Comrie is the only defendant in this action.  See Am. Compl. (Doc. No. 10.) He is an employee of Arrowhead Regional Corrections, Minnesota Department of Corrections.

**I.      PROCEDURAL AND FACTUAL BACKGROUND**

On March 22, 2004, Plaintiff Joseph Harju, a Level III Sex Offender, was released from the Minnesota Correctional Facility at Moose Lake and placed on intensive supervised release. (Comrie Aff. at ¶¶ 2-4.) Defendant Timothy Comrie, an Intensive Supervised Release Supervising Agent employed by Arrowhead Regional Corrections Center, supervised Plaintiff while he was on intensive supervised release. (Id.) As part of his intensive supervised release, Plaintiff was subject to both specific and standard conditions of release, as determined by the Minnesota Department of Corrections. (Comrie Aff. at ¶ 6.) Condition Three of the Special Conditions of Release reads, "No direct or indirect contact with minors without prior documented approval of the agent/designee." (Comrie Aff., Ex. B at p. 1.) Condition Four of the Standard Conditions of Release reads, "The offender will at all times follow the instructions of the agent/designee." (Id. at p. 2.) Plaintiff signed the document containing the special and standard conditions of release. (Id. at p. 3.) In addition to Defendant Comrie, Supervising Agents Barb Dosser, Kathleen Sieh and David Patton supervised Plaintiff during his period of intensive supervised release. (Comrie Aff. at ¶ 5.)

Prior to his release, Plaintiff filed a civil suit in federal court against various tobacco companies for alleged smoking-related injuries. (Comrie Aff., Ex. D at p. 1.) On March 10, 2004, Plaintiff informed Defendant Comrie by letter that he expected his tobacco lawsuit to go to trial in December 2004 and that he wanted to obtain legal assistance after his release. (Id. at p. 2.) For that purpose, he requested limited Internet access at the Duluth Public Library. (Comrie Aff., Ex. D at p. 2.)

In late April or early May 2004, Shirley Duke, the coordinator for Together for Youth, a

social and support group for gay and lesbian teenagers in Duluth, Minnesota, retrieved a message from Plaintiff from the organization's answering machine. (Duke Aff. at ¶ 1, Wright Aff., Ex. B.) In this message, Plaintiff identified himself as "Joe," an attorney who was preparing a tobacco case for trial. (Wright Aff., Ex. A.) Plaintiff's message stated that he was searching for "a young adult who would be interested in learning legal assistance skills" and was not "biased against gay adults or gay people." (Id.) Ms. Duke believed that "Plaintiff's request was odd," and, therefore, contacted the St. Louis County Attorney's Office who, in turn, instructed Ms. Duke to call Plaintiff and obtain his full name and attorney license number. (Duke Aff. at ¶ 3.) When Ms. Duke returned Plaintiff's call, she discovered that he was not in fact an attorney. (Duke Aff. at ¶ 4.) Ms. Duke informed Plaintiff that Together for Youth was an organization for underage children and that it would not be appropriate to refer someone to help him. (Id.) In the course of the conversation, Plaintiff told Ms. Duke that he had also contacted the Northland Gay Men's Center and OutFront Minnesota. (Wright Aff., Ex. B.) Because Ms. Duke had concerns about Plaintiff's motives and actions, she advised the Northland Gay Men's Center not to have contact with Plaintiff. (Duke Aff. at p. 2.)

      The Duluth Police Department transcribed the message Plaintiff left on the Together for Youth answering machine and Officer Leigh Wright of the Duluth Police Department provided a copy of this cassette recording to Defendant Comrie. (Wright Aff., Ex. B.) On May 7, 2004, Supervising Agent Kathleen Sieh visited Plaintiff's home. (Sieh Aff., Ex. A at p. 3.) She encountered a sign on the inside of his door identifying Plaintiff as "Joe Harju, Attorney." (Id.) She placed Plaintiff in custody for violating the condition of his release that restricted him from having indirect contact with minors. (Comrie Aff., Ex. C at p. 2.)

On May 18, 2004, a revocation hearing was held at the St. Louis County Jail. (Comrie Aff., Ex. F at p. 1.) The hearings and release officer declined to find that Plaintiff had violated a condition of his release because Plaintiff's contact with Together for Youth was with an answering machine and not a minor. (Id.) However, she directed Plaintiff "to have no contact with any organization, group or club which has youth/teen/children as a client base." (Id.) Plaintiff was released into Phase One intensive supervised release subject to wearing a GPS monitoring device and contacting a sex offender program. (Id.)

On August 17, 2004, Plaintiff's supervised release was revoked because he was discovered on the floor of the Duluth Clinic that housed the Pediatrics Department and because, in Plaintiff's apartment, they found a magazine that contained a photograph of nude boys bathing each other. (Comrie Aff., Ex. G. at p. 1-2.) The hearings and release officer determined that Plaintiff had violated the terms of his conditional release by having indirect contact with minors and by possessing sexually explicit material. (Id. at p. 2.)

On May 12, 2006, Plaintiff filed this civil action against Defendant Comrie, and others, under 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Compl.) On June 19, 2006, Plaintiff filed an Amended Complaint, in which he dropped his claims against all parties but Defendant Comrie. (Am. Compl. at 1.) According to the Amended Complaint, sometime between May 18, 2004 and August 2, 2004, Plaintiff alleges that Defendant Comrie forbid Plaintiff from contacting any "gay adult" associations or organizations, including OutFront Minnesota. (Id. at 2.) Plaintiff stated, in a response to an interrogatory, that Defendant Comrie issued this prohibition while standing in the doorway of his residence and that he believes that he was only other person present. (Kelly Aff., Ex. B at p. 3.) Plaintiff seeks unspecified monetary

damages and any equitable relief that the Court deems appropriate.  (Am. Compl. at 4.)

According to the affidavit of John D. Kelly, Esq., there is no evidence that, prior to initiating this lawsuit, Plaintiff brought the alleged prohibition to the attention of any of the other supervising agents or their supervisors, nor is there evidence that he appealed or protested the alleged prohibition.  (Kelly Aff., Ex. B at p. 4.)  The standard and special conditions of Plaintiff's release were never revised to include a prohibition against contacting gay *adult* organizations.  (Comrie Aff. at ¶ 8.)  Defendant responds that he did complain by submitting a November 2004 letter to the Minnesota Attorney General containing the allegations set forth in his Amended Complaint.  (Pl.'s Aff., Ex. A at p. 2.)

## II.     MOTION FOR SUMMARY JUDGMENT

Defendant Comrie moves for summary judgment on the grounds that there is no genuine issue of material fact in dispute and Plaintiff has failed as a matter of law to assert a cause of action under 42 U.S.C. § 1983.  In the alternative, Defendant Comrie argues that he is entitled to qualified immunity.

### A.     Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). Where the moving party shows–"that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case," Id. at 325, "Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id.

A non-moving party cannot rely on the "mere existence of *some* alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56(c) requires the entry of summary judgment against such party. Celotex Corp. v. Catrett, 477 U.S. at 322-23 (1986); accord Reed v. Woodruff County, 7 F.3d 808, 810 (8th Cir. 1993). All evidence will be viewed in the light most favorable to the nonmoving party, e.g., Verte Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980), and *pro se* pleadings are more liberally construed than those drafted by an attorney. Smith v. St. Barnyards Regional Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).

### B. Plaintiff Has Failed to Create a Genuine Issue of Material Fact in Dispute

Plaintiff alleges that Defendant Comrie violated his First and Fourteenth Amendment rights by prohibiting him from contacting gay adult organizations as a condition of his

supervised release.  However, Plaintiff has failed to create a genuine issue of material fact in dispute regarding Defendant Comrie's conduct[2].  Defendant Comrie states in his affidavit that he never placed such a prohibition on Plaintiff.  (Comrie Aff. at ¶ 9.)  In addition, he avers that Plaintiff's conditions of release were not revised by anyone as to prohibit Plaintiff from contacting gay adult organizations.  (Comrie Aff. at ¶ 8)  He further states that the policy of Arrowhead Regional Corrections is that all communications with supervisees be documented in a contact detail log.  (Id.)  He submitted the contact detail log for Plaintiff, which he avers is "a chronological and complete documentation" of all supervising agent contact with Plaintiff for the period during which his team was responsible for Plaintiff's supervision.  (Comrie Aff. at ¶ 10.)  This contact log indicates that Defendant Comrie visited Plaintiff's home alone on four occasions between May 18 and August 2, 2004 (June 1, June 7, June 14, and June 19), but none of the respective entries for any of these dates, or any other dates, contain an entry regarding a prohibition against Plaintiff contacting gay adult organizations.  (Comrie Aff., Ex. A.)  Finally, Defendant Comrie avers that, as a matter of practice, the supervising agents hold weekly meetings during which they discuss any proposed changes to offender conditions of release.  (Comrie Aff. at ¶ 11.)  At these meetings, Defendant Comrie avers, there was never any discussion of restricting Plaintiff from contacting gay adult organizations.  (Id.)  Indeed, each supervising agent responsible for Plaintiff has averred to the validity of the log entries and to not discussing a prohibition against Plaintiff contacting gay adult organizations.  (Sieh Aff. at ¶ 6-7, Dosser Aff. at ¶ 6-7, Patton Aff. at ¶ 6-7.)

---

[2] To the extent that Plaintiff seeks monetary damages for actions taken by Defendant Comrie in his official capacity, those claims are barred by the Eleventh Amendment.

In addition to these affidavits, Defendant Comrie has submitted into evidence a copy of Plaintiff's special and standard conditions of release, as signed by Plaintiff on March 18, 2004. (Comrie Aff., Ex. B.) Neither Plaintiff's Special or Standard Conditions of release contain a prohibition against contacting gay adult organizations. (Id.) Defendant Comrie has also produced a record of Plaintiff's May 18, 2004 release revocation hearing during which the hearing officer modified Plaintiff's special conditions of release to include a prohibition against contacting any organization, group or club which has youth, teens or children as a client base. (Comrie Aff., Ex. F.) This modification does not include a prohibition against contacting gay adult organizations. (Id.)

In contrast, Plaintiff relies solely on his affidavit stating that "sometime between May 18, 2004 and August 2, 2004, [Defendant] told me that I wasn't allowed to have contact with any Gay Adult organizations, including 'OutFront Minnesota.'" (Pl.'s Aff. at ¶ 8.) In addition, Plaintiff submits a November 4, 2004 letter he sent to the Minnesota Attorney General in which he requests an investigation into the revocation of his supervised release and includes the allegation that, subsequent to his release from jail in May 2004, I.S.R. Supervising Agent Comrie told him that he was prohibited from contacting "any" gay organizations for legal assistance. (Pl.'s Mem. Opp. Summ. J, Ex. A.) However, by his own admission, he did not challenge this alleged prohibition before the revocation of his supervised release. Defendant Comrie avers that Plaintiff's Special and Standard Conditions of Release were never revised to include a prohibition against contacting gay *adult* organizations. (Comrie Aff. at ¶ 8.)

The form that contains the conditions of Plaintiff's supervised release, and which Plaintiff signed, reads at the bottom, "The Executive Officer of Hearings and Release or

designee will have the final authority to grant or deny restructuring of the above conditions of release and any such changes will be set forth in writing." (Comrie Aff. Ex. B, at p. 2.) There is no evidence in the record that Agent Comrie sought the necessary permission from the Minnesota Department of Corrections to change Plaintiff's conditions of release or that he informed the other supervising agents of this alleged change to Plaintiff's conditions of release. Moreover, there is no indication that Plaintiff ever received any writing informing him of the alleged change.

Eighth Circuit law is clear that a naked self-serving affidavit, by itself, in the absence of any evidence in the record, is insufficient to create a genuine issue of material fact in dispute and accordingly is insufficient to defeat a motion for summary judgment. In Moody v. St. Charles County, the Eighth Circuit affirmed summary judgment in favor of a defendant police officer on plaintiff's § 1983 claim for Fourth Amendment violations even though plaintiff attempted to create a genuine issue of material fact in dispute by submitting his own affidavit in opposition to the motion. 23 F.3d 1410, 1412 (8th Cir. 1994). The plaintiff alleged that he was wrongly arrested for selling narcotics to the defendant police officer because the defendant police officer falsely accused the plaintiff of selling him narcotics. Plaintiff submitted an affidavit in which he stated that the defendant police officer was lying and submitted deposition testimony to the effect that the defendant police officer was a habitual drug user and dealer. Id. at 1411-1412. Nonetheless, the court found that the deposition testimony was insufficient to demonstrate that the plaintiff did not sell drugs to the officer and held that "[w]ithout some evidence other than Moody's own naked assertions that he did not sell drugs, summary judgment was appropriately granted to [defendant]." Id. at 1412.

In Conolly v. Clark, the Eighth Circuit affirmed summary judgment in favor of a defendant in a contract dispute even though Plaintiff submitted his own affidavit in an attempt to create a genuine issue of material fact in dispute. 457 F.3d 872, 876 (8th Cir. 2006). The defendant disputed whether the parties had entered into a contract under which defendant would sell a company to plaintiff, or whether they had merely entered into an "agreement to agree". Id. at 874. Plaintiff sought to use his own affidavit to "establish a litany of specific contractual terms that he assert[ed] were definite in the oral agreement." Id. at 876. In rejecting plaintiff's attempt to create a genuine issue of material fact in dispute on the issue of whether the agreement was final, the Eighth Circuit noted, "a properly supported motion for summary judgment is not defeated by self-serving affidavits." Id. See also; Fuller v. County of Charleston, 444 F.Supp.2d 494, 499 (D.S.C. 2006) (court granted summary judgment to defendant police officer on plaintiff's Eighth Amendment claim where plaintiff alleged that he suffered double vision as a result of defendant officer's failure to prevent an assault by a fellow inmate and the only evidence of such injury was plaintiff's own affidavit).

As discussed above, in support of his claim, Plaintiff has submitted nothing more to defeat this motion than a self-serving affidavit (written after Defendant Comrie filed for summary judgment) and his November 2004 letter to the Minnesota Attorney General, which simply reiterates the allegations in his Amended Complaint. These naked assertions, without any support whatsoever in the record, are insufficient to create a genuine issue of material fact in dispute regarding whether Agent Comrie forbid Defendant from contacting gay adult organizations as a condition of his supervised release.

The record is clear that, as a condition of his supervised release, Plaintiff was only

prohibited from having "contact with any organization, group or club which has youth/teen/children as a client base." Defendant Comrie's affidavit establishes that Plaintiff was free to contact adult gay organizations. Plaintiff has failed to establish a genuine issue of material fact in dispute regarding his claims that Defendant Comrie violated his rights under the First and Fourteenth Amendments. Accordingly, the Court recommends that Defendant Comrie's motion for summary judgment be granted.

Based upon the foregoing and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Defendant's Motion for Summary Judgment (Doc. No. 24) be

    **GRANTED**.

Dated: May 29, 2007

                                              s/ Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) a party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 13, 2007**, a writing which specifically identifies those portions of this Report which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order of judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.